## PEOPLE v. OAKLAND COUNTY TREASURER.

1. TAXATION—STATE-OWNED LANDS—SALE ON LAND CONTRACT—EXEMPTIONS—CONSTRUCTION OF STATUTES.

Lands which the State acquired in course of widening of State highway that were in excess of amount needed and were sold on land contract were not assessable for taxes until enactment of statute specifically subjecting them to taxation notwithstanding State had not given a deed since statutory provisions theretofore exempting State-owned lands from taxation made no distinction between lands owned and lands used by the State, the legislature's construction of the law as it stood before its enactment of amendment subjecting such lands to taxation being entitled to the utmost respect (1 Comp. Laws 1929, § 3390, as amended by Act No. 235, Pub. Acts 1939, and Act No. 234, Pub. Acts 1941; § 3395, as amended).

2. STATUTES—CONSTRUCTION.

Statutory language that is clear and unambiguous does not require judicial construction.

3. COSTS—PUBLIC QUESTION—EXEMPTION OF STATE-OWNED LANDS FROM TAXATION.

No costs are allowed in suit to set aside assessments and taxes on lands owned by State but which had been sold on land contract prior to amendment of statute subjecting them to property tax assessment, a public question being involved (1 Comp. Laws 1929, § 3390, as amended by Act No. 235, Pub. Acts 1939, and Act No. 234, Pub. Acts 1941; § 3395, as amended).

Appeal from Oakland; Holland (H. Russel), J. Submitted June 7, 1945. (Docket No. 35, Calendar No. 43,005.) Decided October 8, 1945.

Bill by People of the State of Michigan against Charles A. Sparks, treasurer of the county of Oakland, and others to have assessments and taxes

against certain parcels of land declared void. De-cree declaring taxes and assessment against certain lands void and others valid. Plaintiff appeals. Re-versed insofar as decree holds assessments and taxes valid.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *A. Floyd Blakeslee* and *Daniel J. O'Hara,* Assistants Attorney General, for plaintiff.

*William C. Hudson,* City Attorney, for city of Royal Oak and others.

*Harry J. Merritt,* Corporation Counsel of Oakland County, for Oakland County Treasurer and others.

*George A. Cram,* for Board of County Road Commissioners.

BUSHNELL, J. Plaintiff, People of the State of Michigan, filed a bill of complaint against defendants, treasurer of Oakland county, drain commissioner of Oakland county, board of county road commissioners of Oakland county, treasurer of the city of Royal Oak, assessing officer of the city of Royal Oak, and the city of Royal Oak, seeking a decree declaring the assessments and taxes against certain parcels of land void, and that the same be cancelled and all records of such assessments and taxes vacated and set aside.

The lands involved are those which were acquired by the State for the construction and improvement of State trunk line highway 10, and were generally known as ''excess lands'' in that they were held by the State after the completion of the highway for

disposition by the State highway commissioner, as provided by Act No. 352, Pub. Acts 1925, as amended (1 Comp. Laws 1929, § 3884 *et seq.* [Comp. Laws Supp. 1940, § 3884 *et seq.,* Stat. Ann. and Stat. Ann. 1937 Cum. Supp. § 8.171 *et seq.*]). When the lands were first acquired by the State in 1924, 1925 and 1926, title thereto was taken in the names of Thad D. Seeley and Frank F. Rogers, sometimes described as "trustees of the city of Pontiac," and at other times as "trustees." Rogers was the State highway commissioner from 1913 to 1929, and Seeley was in charge of acquiring property for the Woodward avenue widening project under his direction.

In 1927 the legislature enacted Act No. 295, which reads as follows:

"SECTION 1. All contracts, deeds or other instruments conveying to the State, through Frank F. Rogers and Thad D. Seeley, trustees, certain lands for State trunk line highways, are hereby approved and declared to be legal transfers of such lands to the State.

"SEC. 2. Said Frank F. Rogers and Thad D. Seeley, as such trustees, are hereby authorized to sell any of such lands not needed for trunk line highways and execute proper conveyances of title thereto: *Provided,* That such conveyances shall be made at such time and upon such terms as the State administrative board shall direct."

This same statute was re-enacted in Act No. 282, Pub. Acts 1929, in the same language. 1 Comp. Laws 1929, §§ 4464, 4465 (Stat. Ann. §§ 9.1061, 9.1062).

Some of the lands in question were sold on land contracts to private parties. Believing that "excess lands" were subject to taxation, they were assessed by the city of Royal Oak for taxes for the years

1927 to 1937. This, according to the findings of the trial judge, was done because there was nothing on the face of the deeds, as recorded, to show that the property belonged to the State of Michigan; and although it was more or less generally known to the city assessor that Rogers and Seeley were acting for the highway department, he did not have definite knowledge as to the scope of their authority.

It is alleged in the bill of complaint that the taxes levied were rejected by the auditor general of the State on June 30, 1941, who gave as his reason that the taxes were assessed on "State-owned property at time of assessment." They were, therefore, returned to the county treasurer for return to the city of Royal Oak for reassessment at large. They were, however, again spread on the 1941 tax rolls against the State of Michigan and payment has been refused by the State on the ground that the assessments and taxes are illegal and invalid.

The treasurer, drain commissioner and the board of county road commissioners of the county of Oakland admitted all of the allegations of the State, except as to the invalidity of the tax. The treasurer, assessor and municipality of Royal Oak took the position that lands standing in the names of Rogers and Seeley were subject to taxation, and make much of the absence of a comma in their characterization as "trustees of the city of Pontiac." The State insists that this was descriptive only and that they were not trustees for the city but were trustees residing in the city of Pontiac. Defendants, city officers and city of Royal Oak, further insist that the rule that should be applied is not that of ownership, but that of use; and since land contract purchasers have an equitable title, and the legal title of lands sold on land contract is held only in trust by the State for the purchaser, such lands are taxable, because they are not owned by the State.

The trial judge held that as to lands acquired by the State, but not resold, the assessments and taxes were void. The court in its opinion stated the essence of its holdings as to these lands as follows:

"The State of Michigan may not be required to pay taxes for the lands here involved and not sold to third parties on land contract regardless of their use and especially due to the fact that the ownership here was of a temporary nature and had its inception in the acquisition of lands for public use.

"Nor can any of the lands here involved be taxed because it may have been the duty of Messrs. Rogers and Seeley under the first acts of 1923 to take the naked nominal legal title of the land acquired in the name of Oakland county."

However, as to lands sold on contract the court held:

"That only those taxes assessed for a period or periods during which the lands here involved were sold on land contracts are valid and enforceable."

The parties hereto are in agreement as to the facts, but differ only as to the applicable law. The respective briefs contain many citations of authorities pro and con. We do not feel it necessary to cite any authorities on the subject because we are of the opinion that the situation is controlled by appropriate legislative enactments which do not distinguish, except as hereinafter noted, between lands owned and lands used by the State.

Section 7 of the general property tax law, Act No. 206, Pub. Acts 1893, as amended (1 Comp. Laws 1929, § 3395 [Stat. Ann. § 7.7]), provides in subsection 2 that: "All public property belonging to the State of Michigan, except licensed homestead lands, part-paid lands held under certificates, and lands purchased at tax sales and still held by the State," shall be exempt from taxation.

Section 2 of the general property tax law defines real property as follows:

"For the purpose of taxation, real property shall include all lands within the State, and all buildings and fixtures thereon, and appurtenances thereto, except such as are expressly exempted by law." 1 Comp. Laws 1929, § 3390 (Stat. Ann. § 7.2).

The situation presented in the instant case was subsequently met by the legislature by acts amending section 2; *i.e.,* Act No. 235, Pub. Acts 1939, and Act No. 234, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 3390, Stat. Ann. 1944 Cum. Supp. § 7.2), so that this section now reads:

"For the purpose of taxation, real property shall include all lands within the State, and all buildings and fixtures thereon, and appurtenances thereto, except such as are expressly exempted by law, and shall include all real property owned by the State of Michigan heretofore purchased or condemned for public highway purposes by any board, officer, commission or department thereof and sold on land contract, notwithstanding the fact that the deed has not been executed transferring title.

"The taxable status of persons and real property shall be determined as of the first day of April, which shall be deemed the tax day."

It will thus be seen that the legislature understood that lands purchased or taken for public highway purposes and thereafter sold on land contracts were exempt from taxation, and it therefore definitely concluded in the acts just cited that such land should thereafter be taxable. This construction by the legislature of the law as it stood before its amendment is entitled to the utmost respect.

The statutory language is clear and unambiguous, and does not require judicial construction. At the time the assessments and taxes in question were

levied, all of the lands now under consideration were exempt from taxation by act of the legislature.

The decree entered in the trial court must be vacated in part and one may be entered here sustaining the position of the State, *i.e.*, that those assessments and taxes for the years 1926 to 1937, inclusive, against lands in the city of Royal Oak which were sold to and held by private parties under land contracts with the State of Michigan are illegal and void.

The decree of the trial court is affirmed as to lands not sold by the State, and reversed as to lands that were sold. A public question being involved, no costs will be allowed.

STARR, C. J., and NORTH, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.